1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11   DAVID A. WHITMORE, an individual,         CASE NO. 10cv1137-LAB (BLM)

12                     Plaintiff,        **ORDER ON MOTION TO DISMISS**

       vs.

13

14   HARTFORD CASUALTY INSURANCE
  COMPANY, a Connecticut Corporation
15   doing business as THE HARTFORD, and
  DOES 1 to 10, inclusive,

16                   Defendants.

17

18   **I.**     **Introduction**

19         David Whitmore was severely injured when an SUV driven by Coy's Produce

20 employee Lucy Busalacchi collided with his motorcycle. Coy's automobile insurance carrier,

21 Mercury Insurance, agreed to pay Whitmore $738,761 — the $750,000 policy limit less a

22 property damage payout to Whitmore. Coy's also had a general liability insurance policy

23 through the Defendant in this case, Hartford Casualty. But when Whitmore offered to settle

24 his claims against Coy's and Busalacchi for $1,738,761 — the Mercury amount plus the $1

25 million limit of the Hartford policy — Hartford denied that it had any coverage obligations.

26 (Pl. Ex. A, p. 45–46.)

27         The parties proceeded with litigation and subsequently stipulated to a binding judicial

28 arbitration. The arbitrator found that Busalacchi was negligent, that Coy's was vicariously

liable for her negligence, and that Whitmore was entitled to $3,393,585.51 in damages and $28,928.66 in costs and disbursements. (Pl. Ex. A, pp. 62–63.) These findings are not in dispute here.

Before Whitmore's claims were even heard by the arbitrator, Coy's and Busalacchi assigned to him all of their contractual rights against Hartford. (Pl. Ex. A, pp. 45–49.) That is why *Whitmore* now seeks $2,683,753.10[1] from Hartford — the difference between the arbitrator's award and the amount Mercury has agreed to pay under Coy's automobile insurance policy. The only question this case presents is whether Coy's policy with Hartford entitles Coy's to coverage for its automobile-related liabilities.

**II.   The Policy**

Hartford issued the policy at issue to Coy's for the period of time from October 6, 2007 to October 6, 2008. The parties agree that this policy — the "Spectrum Policy" — provided coverage for general business liabilities. (*See* Br. at 1, Opp'n Br. at 3.) The policy language confirms this:

> A.  COVERAGES
>
> 1.   BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)
>
> Insuring Agreement
>
> a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies.

(Pl. Ex. A, p. 20.) The parties also agree, as they should, that the Spectrum Policy contains an automobile exclusion.

> B.  EXCLUSIONS
>
> 1.  Applicable to Business Liability Coverage
>
> This insurance does not apply to:

---

[1] The total of the damage award and costs / disbursements is $3,422,514.17. According to the complaint, the arbitrator found the judgment total to be $3,422,514.10 — a minor difference of $0.07. Whitmore bases his requested relief off the $3,422,514.10 figure.

g.  Aircraft, Auto, Or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured.

(Pl. Ex. A, pp. 22, 25.)  What the parties don't agree on is the significance of an "Other Insurance" provision in the Spectrum Policy:

E.    LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS

7.  Other Insurance

If other valid and collectible insurance is available for a loss we cover under this Coverage Part, our obligations are limited as follows:

b.  Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(4) Aircraft, Auto or Watercraft

If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section A. — Coverages.

(Pl. Ex. A, p. 35.)  Whitmore argues the "Other Insurance" provision "creates excess coverage in the case of a catastrophic auto loss covered by another primary policy." (Opp'n Br. at 2.)  He doesn't deny that the (B)(1)(g) automobile exclusion applies to his claims, but it falls under *Section B* of the Spectrum Policy.  The "Other Insurance" provision, however, appears to provide excess coverage for automobile-related liabilities not excluded in *Section A*.  In other words, "the Section B auto exclusion does not apply in the excess context." (Opp'n Br. at 10:7–10.  *See also id.* at 7:1–9, 11:11–22.)

Hartford's position is simply that the "Other Insurance" provision contains an obvious typographical error: "Exclusion g. of Section A. — Coverages" should read "Exclusion g. of Section B — Exclusions."  There is no "Exclusion g." in Section A of the Spectrum Policy, anyway.  But the fact that there is one in Section B, and that it applies to automobile-related

liabilities, gives rise to a strong inference that *that* automobile exclusion was intended to apply to excess insurance under the "Other Insurance" provision.  (Reply Br. at 5–7.) Hartford also argues that the "Other Insurance" provision, by its own terms, only comes into play when the Spectrum Policy covers a claim: "If other valid and collectible insurance is available *for a loss we cover under this Coverage Part*, our obligations are limited as follows . . . ."  Because the Spectrum Policy doesn't cover automobile-related claims in the first place, it's Hartford's position that the "Other Insurance" provision isn't even triggered. (See Br. at 1:19–22, 2:1–2, 8:3–6, 8:22–23.)

## III.    Discussion

The parties' respective briefs complicate their dispute unnecessarily.  It can actually be resolved with the rather straightforward application of a handful of uncontroversial principles, the first of which is that the ordinary rules of contract interpretation apply to the terms of an insurance policy.  *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002).  The terms are to be construed in their ordinary and popular sense, not as an attorney or insurance expert might construe them.  *E.M.M.I. Inc. v. Zurich American Ins. Co.*, 84 P.3d 385, 390 (Cal. 2004).  If ambiguities arise that invite conflicting interpretations, both of which are reasonable, they should be resolved in favor of the insured and in favor of greater coverage.  *HS Servs., Inc. v. Nationwide Mut. Ins. Co.*, 109 F.3d 642, 645 (9th Cir. 1997) (citing *Producers Dairy Delivery Co. v. Sentry Ins. Co.*, 718 P.2d 920, 924 (Cal. 1986)).  The Court's guiding aim is to effectuate the mutual intention of the parties. *Hyundai Motor America v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 600 F.3d 1092, 1097 (9th Cir. 2010) (quoting *Hameid v. Nat'l Fire Ins. of Hartford*, 71 P.3d 761, 764 (Cal. 2003)). In doing so, it must consider the policy "as a whole and in the circumstances of the case." *Stanford Univ. Hosp. v. Fed. Ins. Co.*, 174 F.3d 1077, 1083 (9th Cir. 1999).

The question the Court confronts here is simple: Taking the terms of the Spectrum Policy at face value, and considering the policy in its entirety, does the reference to "Exclusion g. of Section A. — Coverages" in (E)(7)(b)(4) allow for the inference that the automobile exclusion in Section B doesn't apply to excess coverage?  The Court does not

believe it does. "Section A. — Coverages" is obviously a typographical error, and it's unreasonable to opportunistically seize upon the error, as Whitmore does, and argue that it renders the Spectrum Policy ambiguous. As Hartford rightly argues, not all typographical errors do. *See Stasher v. Harger-Haldeman*, 58 Cal.2d 23, 33 (Cal. 1962); *Heidlebaugh v. Miller*, 126 Cal.App.2d 35, 38 (Cal. Ct. App. 1954).

Section A doesn't mention any exclusions, which Whitmore acknowledges. (Opp'n Br. at 5 n. 1, 11:16, 12:28–13:2.) Nor should it; Section A addresses "Coverages" and Section B addresses "Exclusions." (Pl. Ex. A, pp. 20, 22.) Given this division of content in the Spectrum Policy, and given that (B)(1)(g) excludes automobile-related liabilities from coverage, it's unreasonable to think that the "Exclusion g." referenced in (E)(7)(b)(4) is anything other than the automobile exclusion of (B)(1). Whitmore's opposition brief is chockablock with well-researched tenets of contract and insurance law, but none of them can establish that the interpretation of the Spectrum Policy he urges is a reasonable one.[2]

Whitmore argues that replacing Section A with Section B in (E)(7)(b)(4) would create redundancy in the Spectrum Policy. (Opp'n Br. at 12.) That's not true. The automobile exclusion in (B)(1)(g) contains exclusions of its own — liabilities it does not apply to, in other words — so there could be, in fact, a "loss aris[ing] out of the maintenance or use of . . . not subject to Exclusion g. of Section B. – Exclusions." Finally, there's good reason to believe the "Other Insurance" provision of the Spectrum Policy, under which the provision at issue appears, isn't even triggered in this case because it applies to "a loss we cover under the Coverage Part"; the automobile exclusion of Section B, however, limits that coverage, and is therefore implicated in (E)(7) even without the botched reference to it in (E)(7)(b)(4). *See Pines of La Jolla Homeowners Ass'n v. Indus. Indemnity*, 5 Cal.App.4th 714, 723 (Cal. Ct. App. 1992) ("Other insurance clauses do not, of course, create coverage where none exists")

---

[2]     The Court could accept that "Exclusion g. of Section A. – Coverages" does not contain a typographical error if the explanation is that "of" doesn't mean "in" but rather "applicable to." Even though "Exclusion g." appears in Section B, its purpose is to minimize coverage under Section A. To the extent Sections A and B are interdependent in this way, it's plausible that the (E)(7)(b)(4) doesn't contain a typographical error as much as a poorly chosen preposition. Even on this reading, though, the "Exclusion g." referenced in (E)(7)(b)(4) comes from Section B, and Whitmore's proposed construction is unreasonable.

1   (citation omitted); *Dart Indus., Inc. v. Commercial Union Ins. Co.*, 28 Cal.4th 1059, 1079 (Cal.

2   2002) ("other insurance" clauses applicable only where policy covers liability in the first

3   instance); *Burns v. California FAIR Plan Assn.*, 152 Cal.App.4th 646, 657 (Cal. Ct. App.

4   2007)  (same).

5   **IV.    Conclusion**

6          Hartford has the better arguments here, and the construction of the Spectrum Policy

7   that Whitmore proposes is unreasonable.  Given that the interpretation of an insurance

8   policy is a question of law, *Travelers Cas. and Sur. Co. v. American Int'l Surplus Lines Ins.*

9   *Co.*, 465 F.Supp.2d 1005, 1012 (S.D. Cal. 2006), and that Whitmore concedes Hartford's

10  motion could easily be converted into one for summary judgment (Opp'n Br. at 6), there is

11  no need for this litigation to proceed further.[3]

12         The Court sympathizes with Mr. Whitmore's predicament.  He was ravaged by

13  Busalacchi's negligence, obtained a judgment of $3,393,585.51, and has been able to

14  collect only $738,761.  But, under the Spectrum Policy, this unfortunate circumstance isn't

15  Hartford's to right.  The motion to dismiss is **GRANTED**, and this case is dismissed with

16  prejudice.

17         **IT IS SO ORDERED**.

18  DATED:  December 2, 2010

19

20

21  **HONORABLE LARRY ALAN BURNS**
    United States District Judge

22

23

24

25

26

27         [3] Because the Court considered only the Spectrum Policy, which was incorporated
    by reference in Whitmore's complaint, and no other, external documents, there is no need
28  to officially convert Hartford's motion to dismiss into a motion for summary judgment.  *See*
    *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).